# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 24-1493V

```
* * * * * * * * * * * * * * * * * * * * * * * *
                                             *
GARY SOHN,                                   *        Filed: February 6, 2026
                                             *
                 Petitioner.                 *
                                             *
                                             *
         v.                                  *
                                             *
SECRETARY OF HEALTH AND                      *
HUMAN SERVICES,                              *
                                             *
                 Respondent.                 *
                                             *
* * * * * * * * * * * * * * * * * * * * * * * *
```

## ORDER GRANTING MOTION TO DISMISS

On September 25, 2024, Gary Sohn filed a *pro se* petition for compensation under the National Childhood Vaccine Injury Act of 1986, *as amended*, 42 U.S.C. §§ 300aa-10 et seq. ("Vaccine Act"). The matter was subsequently assigned to my docket. (ECF No. 5). Petitioner alleges that a pneumococcal vaccine received on September 20, 2021, caused him to incur, among other things, a shoulder injury related to vaccine administration ("SIRVA"). *See generally* Petition, received Sep. 25, 2024 (ECF No. 1) ("Pet."). Counsel has since appeared for Mr. Sohn.

Respondent moved to dismiss the matter on the basis of its timeliness, and both sides have had the opportunity to brief their positions (all of which were filed in reaction to an Order to Show Cause I previously issued in the matter). *See* Order to Show Cause, dated Feb. 24, 2025 (ECF No. 12); Petitioner's Response, dated June 30, 2025 (ECF No. 18) ("Resp."); Respondent's Response/Motion to Dismiss, dated Aug. 27, 2025 (ECF No. 23) ("Opp."); Petitioner's Reply/Opposition to Dismissal, dated Sep. 24, 2025 (ECF No. 26) ("Reply"). For the reasons set forth below, I find the claim is untimely, and therefore properly dismissed.

## I. Brief Factual Summary

Petitioner was administered a pneumococcal vaccine on September 20, 2021. Ex. 4 at 3; Pet. at 1. A week later (September 27, 2021), Mr. Sohn went to Neighborhood Family Doctor where he was seen by Dr. Rodolfo Trejo for a medication refill. Ex. 1 at 126. The record from this

visit says nothing about any reports of shoulder pain or an examination of his right shoulder, although Petitioner was at this time also prescribed a nonsteroidal anti-inflammatory medication used to treat mild to moderate pain. *Id*. at 127. This record also makes no mention of the vaccination that had occurred the week before.

Almost three months later (on December 22, 2021), Petitioner again saw Dr. Trejo for a medication refill. Ex. 1 at 120. In an addendum written by Dr. Trejo, it was stated that Mr. Sohn displayed "decreased" strength of the right arm, tested at "3/5." *Id*. at 121. Dr. Trejo also noted that Petitioner had muscle atrophy, shoulder pain, and limited range of motion of the right shoulder "after vaccination on sep/21." *Id.* No mention of vaccination is contained in this record.

Over the next nine months of 2022, Petitioner continued to be seen by Dr. Trejo for medication management of his non-contributary chronic conditions. Ex. 1 at 103–17. None of these records memorialize left shoulder complaints or related exams, however, beyond a reference to shoulder pain as a complaint in a September 21, 2022 record (a year after the vaccination in question). *Id.* at 101. And Petitioner thereafter was again prescribed the same anti-inflammatory medication he had previously received.

Other records filed in the case confirm concerns for shoulder pain or range of motion limitations that were communicated to treaters subsequently—in 2023 and 2024. Petitioner eventually underwent an MRI in December 2024 (notably, after this case's initiation) that revealed a subscapularis tendon partial tear, osteoarthritis, and subacromial-subdeltoid bursitis. Ex. 1 at 268–69. And Petitioner has since continued to obtain treatment for shoulder pain and arm weakness, engaging in physical therapy to that end. Ex. 3 at 7–59.

Petitioner maintains, on the basis of the totality of the medical records, that his pain onset began the day of vaccination—September 20, 2021. Resp. at 7 ("Petitioner reported that his pain symptoms began the day he received his pneumonia vaccination on September 20, 2021. Ex. 1 at 29"). Ultimately, Petitioner alleges that the foregoing medical history is consistent with a Table SIRVA (although the original Petition, which has not been amended, also contends he suffered a number of related injuries ("complex regional pain syndrome, connective tissue disease, tendonitis, [and] avascular necrosis, . . ." (Pet. at 2)). Resp. at 7.

## II.    Relevant Procedural History

The Petition (filed while Mr. Sohn was still a *pro se* claimant) was received by the Clerk of the Court of Federal Claims on September 25, 2024, and marked as filed that same day. *See* Pet. at 1. Petitioner alleges that he placed the Petition in the U.S. mail (sent from Delray Beach, Florida, to Washington, D.C.) on September 19, 2024 (a Thursday). Resp. at 8. In support, he references the Petition's mailing envelope received by the Court, which bears a postage date of September

2

19th. *See* ECF No. 1-2.

Within a few months of the Petition's filing, I issued my above-referenced Show Cause Order—mainly directing Petitioner to better substantiate his claim with more record evidence. *See generally* ECF No. 12. Prior to the deadline to respond to the Order, however, present counsel appeared for Petitioner, and I extended the response deadline accordingly. Subsequently, Respondent raised the issue of the claim's timeliness, and Petitioner was provided the chance to react to that issue. The matter is ripe for resolution.

## III.    Parties' Arguments

*Petitioner*

Mr. Sohn argues that the Petition was timely under the Vaccine Act and the Program's Vaccine Rules. Resp. at 7. The Vaccine Act and applicable rules clearly state that a petition for compensation must be filed within 36 months of the first onset or manifestation of symptoms from an alleged vaccine injury. *Id.* (citing 42 U.S.C. §§ 300aa-16; Vaccine Rule 19(a)(1)(a–b)). Petitioner puts forward three arguments as to why his claim is timely.

First, Petitioner argues that the original filing deadline fell on a weekend, and was therefore pushed to the next business day, as per Vaccine Rule 19(a). Resp. at 7. The Vaccine Rules stipulate that the period to timely file is extended to a day that is not a legal holiday or a weekend. *Id.*; Vaccine Rule 19(a)(1)(a–b). Because Petitioner claimed his onset occurred the day of his vaccination (September 20, 2021), the matter needed to be initiated by no later than September 21, 2024—a Saturday in that calendar year. Resp. at 8. However, since the Court is closed on Saturday, his deadline was effectively extended to Monday, September 23, 2024. *Id.*

Second, Petitioner notes that Vaccine Rule 19(c) adds an additional three days to his filing deadline, when service is made by mail. Resp. at 8 (citing Vaccine Rule 19(c)). Petitioner mailed the Petition on September 19, 2024. *Id.* As a result of attempting to effect filing by mail, his deadline was further extended by an additional three days. *Id.* With the combined extensions, the filing deadline should have been September 26, 2024. *See id.* Therefore, receipt of the filing on the 25th, and its subsequent docketing of filing that same day, rendered it timely. *Id.*

Petitioner's third and final argument for the timeliness of his filing is proposed in the alternative, should his other arguments be rejected. Under such circumstances, even if the Petition was filed late, equitable tolling should be permitted in this case, extending his deadline to the date the Petition was received. Resp. at 8 (citing to *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1344 (Fed. Cir. 2011)). Petitioner argues that he pursued his rights diligently, and some extraordinary circumstance stood in his way to prevent a timely filing. *Id.* at 9. His diligence was

evidenced by the fact he attempted to initiate the claim by mail filing, several days prior to the 36-month filing deadline. *Id.* And any untoward delay in receiving the Petition was caused by the Post Office, thus establishing evidence of an "extraordinary circumstance" out of his control. *Id*. Thus, the filing should still be deemed to have been timely. *Id.*

On Reply, Petitioner added a new argument: that the onset date is also disputed (thus impacting how the limitations period is calculated). Reply at 2. Petitioner points out that the parties have not agreed to the date of injury onset, and Respondent's assertion that onset began on September 20, 2021, is based on an incomplete record. *Id.* at 3. Since this factual issue is unresolved, Petitioner maintains that resolution of onset is a prerequisite issue to resolve before determining the merits of Respondent's Motion to Dismiss. *Id.* at 2. In ruling on a motion to dismiss, like ruling on a motion for summary judgment, special masters must draw every inference concerning disputed facts in favor of the nonmoving party. *Id.* (citing *Arnold v. Sec'y of Health & Hum. Servs.*, No. 21-437V, 2025 WL 1662435, at *2 (Fed. Cl. Spec. Mstr. Apr. 8, 2025); *Warfle v. Sec'y of Health & Hum. Servs.*, 05-1399V, 2007 WL 760508 at *2 (Fed. Cl. Spec. Mstr. Feb. 22, 2007)). Therefore, the special master should find in favor of Petitioner on this issue.

But Petitioner adds as well that even if the date of injury was indeed September 20, 2021, his filing was still timely under Vaccine Rule extensions or equitable tolling. Expanding on his arguments, he offers that the computation of time under Vaccine Rule 19(a) is applicable and sets the filing deadline as September 21, 2024. Reply at 3. Vaccine Rule 19(a) instructs that for "any applicable statute that does not specify a method of computing time" where the period of time is stated in days or a longer unit of time, time is computed by excluding the day of the event that triggers the period and count every day thereafter. *Id.*; Vaccine Rule 19(a)(1)(a). Since the Vaccine Act does not specify a method of computing time, then Rule 19(a) applies. Reply at 3. This would set Petitioner's filing deadline on Saturday, September 21, 2024, which would then be extended to Monday, September 23, 2024. *Id.* at 4.

In addition, Petitioner claims that the mailing date of the Petition should be deemed the date of filing, regardless of its receipt. Reply at 4. Petitioner asserts that Vaccine Rules do not specify that *actual receipt* by the Clerk's Office is required for a paper petition to be considered filed. *Id.* (citing Vaccine Rule 2(b)). Petitioner points to another case (albeit involving a prisoner, and what is known as the "prison mailbox rule")[1] where a special master found that neither the Vaccine Act nor the Vaccine Rules contain language establishing when a paper petition is deemed filed. *Id.* at 4–5 (discussing *Mahan v. Sec'y of Health & Hum. Servs.,* No. 22-880V, 2023 WL 9288450, *14 (Fed. Cl. Spec. Mstr. Oct. 16, 2023) ("the undersigned finds the Vaccine Rules do

---

[1] As noted below, the prison mailbox rule deems a submission by incarcerated petitioners filed at the moment the filing passes into the control of prison officials (and hence once placed in a prison mailbox for pickup by the U.S. Mail). *Sharpe v. United States*, 111 Fed. Cl. 334, 336 (2013). Vaccine Act Claims embrace the prison mailbox rule, but further restrict its application to only petitions submitted by incarcerated, *pro se* petitioners. *Mahan,* 2023 WL 9288450 at *15.

not provide language as to when a paper petition is deemed filed")). Petitioner argues that the time of filing for paper petitions is thus governed by the date the petition is deposited in the mail. *Id.* at 5. If this were the case, then Petitioner's filing date would be September 19, 2024, rendering it fully timely. *Id.*

Lastly, Petitioner reiterates the argument that equitable tolling applies to his claim because he has sufficiently shown that he diligently pursued his rights and there were extraordinary circumstances that prevented him from timely filing. Reply at 5–6. Petitioner conscientiously and diligently pursued his rights by preparing a Petition, appropriately addressing it, and then mailing it via U.S. mail before his statutory deadline. *Id.* at 6. Petitioner asserts that timely action within the period authorized by Congress is not negligent, but shows diligence. *Id.* Further, any delay in delivering his petition to the Court was a delay outside of his control—the kind of extraordinary circumstances that prevented an otherwise-timely filing. *Id.*

*Respondent*

Respondent argues that Petitioner's claim is time-barred, and Petitioner's arguments are flawed because Petitioner has miscalculated his filing date. Opp. at 3. Petitioner expressly conceded that his injury began on September 20, 2021, when he experienced right shoulder pain after his vaccine. *Id.* (citing Resp. at 7). Petitioner's filing deadline was therefore Friday, September 20, 2024—not Saturday the 21st, as Petitioner contends. *Id.* at 3–4 (quoting *Kegler v. Sec'y of Health & Hum. Servs.,* No. 13-544V, 2014 WL 1568837, at *2 (Fed. Cl. Spec. Mstr. Mar. 28, 2024) ("Petitioner's [Guillain-Barré syndrome] diagnosis occurred on February 8, 2010; therefore, the statute of limitations expired on February 8, 2013"). Petitioner's actual filing deadline fell on a day the Court was open, and Petitioner is not afforded a weekend extension that pushes his filing deadline to the next business day. *Id.* at 4. And even if an extension were appropriate, Petitioner's claim remains time-barred, since it was not received for filing until two days after his proposed extended deadline of September 23, 2024. *Id.*

Respondent also holds that that Vaccine Rule 19(c) is not applicable to when filing deadlines occur under the Act's limitations period. Opp. at 4. Rule 19(c) instead addresses the context of when a party must act *after receiving service of a paper by mail from an opposing party*. *Id.* (citing *Taylor v. Sec'y of Health & Hum. Servs.*, 34 Fed. Cl. 137,140 (1995)). In initiating this matter, Petitioner was not acting, or required to act, "after receiving service of a document by mail from an opposing party." *Id.* If anything, Vaccine Rule 19(c) would permit *Respondent* an additional three days to act upon receipt of a mailed Petition. *Id.* And even if Rule 19 applied, Petitioner's claim remains time barred since this would only push back the filing deadline to September 23, 2024—two days before the Court received the Petition. *Id.* at 5.

Respondent further argues that equitable tolling should not apply to this claim because

5

Petitioner cannot meet the criteria for its application. Opp. at 5–7. Equitable tolling applies in limited circumstances to Vaccine Act claims, and is to be used "sparingly" and only under "extraordinary circumstance[s]," like fraud or duress. *Id.* (quoting *Cloer*, 654 F.3d at 1344). But the two elements for its use—proof of diligence and "extraordinary circumstances"—are not met.

First, Respondent contends that the mailing of the Petition only one day before the correct filing deadline was not diligent, since U.S. First Class Mail delivery is understood to take up to five business days, with no guarantee of delivery within that timeframe. Opp. at 6 (citing *Mail & Shipping Services*, United States Postal Service, https://www.usps.com/ship/mail-shipping-services.htm (last visited Feb. 2, 2026)). A slow delivery was especially foreseeable since the Petition was coming from Florida. *Id.* And, the mailing date otherwise does not factor into when a Petition is actually due under the limitations period. Second, delay in receipt of a mailed petition is not evidence of an extraordinary circumstance. While the Program may on occasion excuse a "late filing where compelling circumstances indicate that such a result would be equitable," late filings on account of a "garden variety claim of excusable neglect," such as here, are not grounds for application of equitable tolling. *Id.* (quoting *Spohn v. Sec'y of Health & Hum. Servs.*, No. 95-460V, 1996 WL 532610, at *8 (Fed. Cl. Spec. Mstr. Sept. 5, 1996)). The temporal delays foreseeable with transmission of materials or filings by U.S. Mail are not extraordinary. *Id.* at 7–8. And there was no evidence of other "untoward delay" pertaining to the delivery of the Petition and its handling by the Court of Federal Claims Clerk's Office. *Id.* at 8.

**Analysis**

I.     *Law on Calculation of Act's Limitations Period and Invocation of Equitable Tolling*

The Vaccine Act's statute of limitations is thirty-six months/three years. Sec. 16(a)(2). The statute begins to run from the manifestation of the first objectively-cognizable symptom, whether or not that symptom was sufficient for diagnosis (or was even *recognized* by a claimant as significant). *Id.*; *Carson v. Sec'y of Health & Hum. Servs.*, 727 F.3d 1365, 1369 (Fed. Cir. 2013). Program authority supports the conclusion that calculation of this timeframe for filing ends on "the anniversary date of the event which triggers the beginning of the statute of limitations." *Spohn*, 1996 WL 532610, at *3 (petition dismissed as untimely; matter filed one day outside of thirty-six-month limitations period). Petitions have been dismissed for being filed outside the statutory timeframe, even if by a *de minimis* amount. *See, e.g.*, *Huntoon v. Sec'y of Health & Hum. Servs.*, No. 21-1965V, 2023 WL 2231842, at *5 (Fed. Cl. Spec. Mstr. Feb. 27, 2023) (finding a petition was untimely by a few days), *mot. for review den'd*, 167 Fed. Cl. 93 (2023).

6

It is beyond question that claims asserted in the Vaccine Program are not subject to a "discovery rule," accruing only when a claimant *learns* he or she might possess a cause of action. Rather, the statute of limitations period is triggered by the objective record of onset of Petitioner's symptoms. *Cloer*, 654 F.3d at 1340. And the failure to be advised of the Vaccine Program or the Act does not support equitable tolling of the statute of limitations period for an otherwise-untimely filed petition. *Speights v. Sec'y of Health & Hum. Servs.*, No. 03-2619V, 2013 WL 5944084, at *13 (Fed. Cl. Spec. Mstr. Oct. 17, 2013). A petitioner cannot generally shield an untimely claim from dismissal by asserting, even in good faith, that she literally was unaware of her Vaccine Act "rights."

The Federal Circuit has held that the doctrine of equitable tolling applies to the Vaccine Act's statute of limitations. *See Cloer*, 654 F.3d at 1340–41. However, in keeping with applicable U.S. Supreme Court precedent, equitable tolling of a limitations period is to be permitted "sparingly." *Irwin v. Depot of Veterans Affairs*, 498 U.S. 89, 96, (1990). The appropriateness of equitable tolling is ultimately decided on a case-by-case basis, without rigid application of any relevant overarching guidelines. *Holland v. Florida*, 560 U.S. 631, 649–50 (2010); *accord Arctic Slope Native Assn v. Sebelius*, 699 F.3d 1289, 1295 (Fed. Cir. 2012).

In the Vaccine Program, petitioners must prove two elements to establish equitable tolling: (1) that the petitioner diligently pursued her rights, and (2) an extraordinary circumstance prevented her from timely filing the claim. *K.G. v. Sec'y of Health & Hum. Servs.*, 951 F.3d 1374, 1379 (Fed. Cir. 2020) (*citing Menominee Indian Tribe v. United States*, 577 U.S. 250, 255 (2016)).

When first articulating this limited exception to equitable tolling, the Federal Circuit primarily enumerated fraud and duress as a basis for equitable tolling—but not, for example, lack of awareness on a petitioner's part that she might have an actionable claim. *Cloer*, 654 F.3d at 1344–45 (noting that tolling of the Vaccine Act's statute of limitations period is not triggered "due to unawareness of a causal link between an injury and administration of a vaccine"). In *K.G.*, 951 F.3d at 1380–82, however, the Circuit endorsed the proposition that an individual's demonstrated mental incapacity could be a basis for equitable tolling. For a mentally incapacitated individual, the Circuit instructed that the details of the individual's relationship with her legal guardian would affect whether there was reasonable diligence or extraordinary circumstances. *K.G.*, 951 F.3d at 1382. More recently, the Circuit concluded that a parent acting as a legal guardian did not establish extraordinary circumstances preventing the filing of a petition where the parent: (1) routinely made medical decisions on behalf of the legally incapacitated individual during the relevant time period, (2) had no documented strained relationship with the individual, and (3) had no conflicts of interest dissuading the parent from filing a petition. *W.J. v. Sec'y of Health & Hum. Servs.*, 93 F.4th 1228, 1241 (Fed. Cir. 2024).

7

II.     *The Limitations Cut-Off Date for the Petition was September 20, 2024*

This matter needed to be filed within three years of Petitioner's onset of pain—meaning no later than **September 20, 2024** (the anniversary date of onset). The bases for this determination are several. First, Petitioner has *affirmatively represented*, in this case and as reflected in prior records, that his pain began the same day as vaccination. *See* Resp. at 7 ("Petitioner reported that his pain symptoms began the day he received his pneumonia vaccination on *September 20, 2021*") (emphasis added)); Ex. 1 at 27 ("Patient expressed concern that this pain has been present *ever since* he received the pneumonia vaccine back in September of 2021") (emphasis added);[2] Ex. 2 at 89–90 ("Muscle weakness of right arm . . . since 2021 after pneumonia injection at the pharmacy per pt"). This kind of same-day onset is common with SIRVAs (even though the Table requirement allows for onset occurring up to 48 hours post-vaccination).

Petitioner argues that in fact the onset date is in dispute (perhaps in an effort to create a fact dispute that prevents a clear limitations cut-off evaluation that might prove fatal to this claim). But this contention is belied by his own contrary representations in briefing this issue (for only the *Reply* maintained a later onset date was possible). Moreover, the outcome herein would be no different even if a later onset was correct. A Table SIRVA claim cannot arise if the vaccinated individual's pain began later than two days post-vaccination—here, September 22, 2021. But it would still be the case that the claim was late-filed, for the Petition was not received, and marked filed, until three days later.[3]

Second, calculation of the limitations period as ending on the anniversary date of onset (rather than literally tallying all ensuing dates in the interval between the limitations period's start and stop dates, based on calendar inconsistencies from year to year) is consistent with federal civil practice for computation of limitations periods. *Goetz v. Sec'y of Health & Hum. Servs.*, 45 Fed. Cl. 340, 342 (1999), *aff'd,* 4 F. App'x 827 (Fed. Cir. 2001) ("[a]s the last vaccination occurred on November 19, 1993, the latest date for symptom onset—and hence the latest date for accrual of the cause of action—is November 19, 1993. The statute of limitations thus expired on November 19, 1996, 36 months after Hayden's last vaccination . . . ."); *see also Spohn ,*1996 WL 532610, at *3 n.7 (discussing federal authority for the conclusion that limitations periods end on the anniversary date of the act triggering the event giving rise to the cause of action).

---

[2] While the "since" modifier is somewhat indeterminate, it is common in the Program (especially when onset is challenged) to interpret complaints of pain "since" or "ever since" vaccination to mean as close as the same day. *Weinberg v. Sec'y of Health & Hum. Servs.*, No. 20-271V, 2025 WL 1218536, at *8 (Fed. Cl. Apr. 2, 2025).

[3] If Petitioner wishes to abandon formally his SIRVA in favor of a non-Table claim—*and if* he can reference medical evidence of an onset on or after September 25, 2021 (since the filing date was three years after that date)—counsel may request reconsideration of this Dismissal Order, and I will evaluate whether there is record support for such an onset. But at this point, it is more than reasonable for me to rely on Petitioner's own representations of what the onset was, along with record evidence that he generally reported onset beginning as of the vaccination).

Petitioner has proposed a *September 21, 2024* cut-off date. Resp. at 8. But he does not explain why the three-year filings deadline would *not* fall on the literal three-year anniversary of the date of onset, or why the 21st is proper for some other reason. As noted above, calculating the deadline to September 20, 2024, is wholly consistent with federal practice. In addition, there is a self-serving quality to arriving at this particular date—a Saturday, in which case the actual deadline would be even later, based on the Vaccine Rules' exclusion of weekends and holidays from time calculation. *See* Vaccine Rule 19(a)(1)(C).

Nevertheless, Petitioner reasons that because in 2024 September 21st fell on a Saturday, under the Vaccine Rules that pertain to computation of time, his actual filing deadline slipped to the following Monday, September 23, 2024. Of course, even if that *were* the proper deadline for initiating this claim, the matter would still be untimely. And this is because the Court properly deems mailed petitions to be filed when *received*—without consideration for when they were mailed, or what happened in the process of mailing. *See, e.g., Graves v. Sec'y of Health & Hum. Servs.,* 577 F. App'x 976, 981 (Fed. Cir. 2014); *Smith v. Sec'y of Health & Hum. Servs.,* 26 Cl. Ct. 116, 119, *aff'd*, 983 F.2d 1088 (Fed. Cir. 1992).

Petitioner suggests that Vaccine Rule 19(c) gave him even *more* time from September 23rd. Resp. at 8 (*citing* Vaccine Rule 19(c) (permitting three additional days to act when "service is made by mail"). But that rule by its own terms clearly applies only "[w]hen a party may or must act within a specified time *after service and service is made by mail."* Vaccine Rule 19(c) (emphasis added). In other words, the three-day extension applies once a case is underway, *and* where a party receives a document by mail service. It cannot be read to add three days to the limitations period for *initiating* a claim—and simply because, as here, a petitioner chooses to use mail service to file the petition.

Thus, this Petition should have been filed by no later than midnight on September 20, 2024 (a Friday, and hence a business day upon which the Court was open)—but it was received, and thus was properly considered to have been filed, *five days later*, on September 25, 2024. The Petition was untimely filed. (And as noted above, this is still the case even if the onset of pain date was two days later).

Petitioner's invocation of another special master's treatment of the "prison mailbox rule"— which he proposes would make the Petition's filing date equivalent to the date it was mailed— does not change the analysis. That rule requires as its name suggests: that the clamant *be* a prisoner/be incarcerated. A petition is "filed" under the prison mailbox rule when it is submitted to prison authorities for forwarding to the Clerk at the Court of Federal Claims. *Mahan*, 2023 WL 9288450 at *18; *McLaron v. United States*, 157 Fed. Cl. 58, 59-60 (2021); *Sharpe*, 111 Fed. Cl. at 335. This approach has not yet been extended to *pro se* claimants who utilize the U.S. mail for filing papers with the Court.

Overall, the proper construction of Vaccine Act petition filing practices, and how they function in light of the limitations period for such claims, is far more straightforward than Petitioner allows. The deadline for filing a Vaccine Act petition is plainly within three years of onset; that deadline falls on the three-year anniversary of the onset date; and petitions not received by the Court on that date are untimely (subject to the weekend extension to the next business date rule). These simple concepts apply to this case, and they are not waived simply because a claimant pursues a matter as a *pro se* litigant.

III.     *Equitable Tolling Does Not Save the Claim*

Although Petitioner implicitly seems to allow that his labored construction of the Vaccine Rules results in no better than an alternative filing date deadline of September 23, 2024—a date that was clearly not met—he contends that equitable tolling should still save the claim. Resp. at 8. In support, he maintains that (a) he clearly *attempted* to initiate the claim before the limitations period ended (since he mailed it on September 19th), and thus acted in good faith, and (b) any delay in the Petition's receipt was attributable to the U.S. Postal Service, and hence beyond his control, and rendering delay an "extraordinary circumstance."

Petitioner's arguments are not persuasive. As noted above, equitable tolling is permitted in Vaccine Act cases, but two requirements must be met. I will assume for sake of argument that Petitioner demonstrated *some* diligence, even if he acted only at the very end of the limitations period (and arguments that he acted while the limitations period still was running, and hence in good faith, go to that element).

But the facts of this case do not support a finding that "extraordinary circumstances" exist such that tolling—even for two days—is appropriate. Petitioner's status in this case as a *pro se* litigant, for example, does not amount to an extraordinary circumstance. He also has not alleged any mental incapacity that prevented him from filing his claim sooner, or any other exigent circumstances that interfered with his ability to act. And the vagaries of the U.S. Mail, moreover, are not something that justifies tolling—indeed, they are fully foreseeable.

Petitioner contends that "[h]e made no miscalculations that caused him to miss the filing deadline." Resp. at 9. But this is facially incorrect, regardless of his diligence in pursuit of the claim.[4] Vaccine Act claimants—including *pro se* individuals—are expected to determine the

---

[4] While I am not exploring herein the degree of Petitioner's diligence, it is indeed a thin reed for him to rely on the mere fact that he filed the claim within a week of the limitations period cutoff as substantiating his diligence. This claim arose on the basis of vaccine received three years prior, there is no discovery rule for Vaccine Act cases, and even *pro se* petitioners have some obligations to determine the basic requirements of a claim before filing one. This is not a case where the Petitioner has demonstrated weeks or months of claim preparation, thwarted at the last moment.

limitations period and act accordingly. By mailing the Petition a day before the limitations cut-off, he did make a significant miscalculation, and this unfortunately means the claim cannot be pursued further.

Accordingly, Respondent's Motion to Dismiss is GRANTED. In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court SHALL ENTER JUDGMENT in accordance with the terms of this Dismissal Order.[5]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.

11